# SUPREME COURT

OF THE

## STATE OF ILLINOIS,

DELIVERED

## DECEMBER TERM, 1835, AT VANDALIA.

---

WILLIAM G. BLAIR, appellant *v.* CALEB WORLEY, appellee.

*Appeal from Vermilion.*

A purchaser of land from the government of the United States or of this State, acquires the right to all the improvements made upon it anterior to his purchase. The act of February 23d, 1819, giving the right to remove fences made by mistake upon the lands of other persons, applies only to natural persons; it has no relation to a case where a fence is erected by mistake upon the lands of the United States or of this State.

In the enactments of legislative bodies, where persons are spoken of, no other than natural persons will be intended, unless it be absolutely necessary to give effect to some powers already conferred on artificial persons, and which it is necessary should be exercised to carry into effect the objects contemplated in their grant or charter.

THIS cause was tried at the October term, 1835, of the Vermilion Circuit Court, before the Hon. Alexander F. Grant and a jury. A verdict was found for the plaintiff below, the appellee, for $25, and judgment was rendered upon this verdict. The defendant appealed to this Court.

S. McROBERTS, for the appellant.

J. PEARSON, for the appellee.

SMITH, Justice, delivered the opinion of the Court :(1)

This was an action of *trespass*, the declaration contains two counts, one for the assaulting and beating the plaintiff, and the other for entering his close, and carrying away a quantity of the

(1) WILSON, Chief Justice, did not sit in this cause.

rails on said close.   The defendant pleaded not guilty, and gave notice of special matter in justification.   By the bill of exceptions taken on the trial of the cause, it appears that the plaintiff in the Court below, erected a fence upon the S. E. qr. of the N. E. qr. of Section 16, in T. 20, N. of Range 11 West, in the fall of 1834, and while the land was public land.   That, on the third day of March, 1835, Blair, the defendant in the Court below, duly purchased from the school commissioner, at private sale, the same lands, and, that he afterwards took and removed the fence and rails erected on the land, after he made such purchase, which were still there.   Upon this proof the defendant's counsel prayed the Court to instruct the jury, that Blair, by virtue of the purchase of the land, became the owner of the fence and rails, and that so far as regards the taking of said fence and rails, they must find the defendant justified; and accordingly find a verdict for him.   The Court below refused the instruction asked, and instructed the jury, that if they believed that the plaintiff had erected the fence on the tract *described,* through *mistake,* believing it to be on the *adjoining tract* of which he was the proprietor, the act of the legislature entitled " *An act to enable persons to remove fences made by mistake on the lands of other persons,*"(1) approved, February 23, 1819, gave the plaintiff, Worley, the right to said rails, and to remove the same, in the manner prescribed in said act.   The defendant excepted to these instructions, and he now assigns in this Court for error, the refusal of the Court below to give the instructions prayed for, and the instructions as given.

In determining the tenableness of the positions assumed by the counsel for the plaintiff in error, in the causes of error assigned, it will perhaps be only necessary to recur to the decision made in this Court at its December term, 1833, in the case of Carson *v.* Clark,(2) and in which the doctrine is recognised, that the purchaser of land from the government of the United States, acquires the right to all the improvements made upon it anterior to his purchase.   Under that decision, it is manifest that the instructions prayed for by defendant's counsel in the Court below, ought to have been given; unless indeed the act referred to, in the instructions given, changed the rights of the parties.   After an attentive examination of that act, it is not perceived that the makers of it could have had in contemplation to establish a rule of action in relation to the erection of fences by mistake between any other than natural persons; certainly not between governments and individuals.   It is not possible to suppose, that they contemplated that the government of the United States or of this State, would become the cultivators of the soil, and erect fences

(1) R. L. 419 ; Gale's Stat. 433.　　　(2) *Ante* 113.

over our vast prairies, and enter into all the various pursuits of agriculture.

Yet it seems to me this must be the necessary inference, if the construction contended for by the appellant's counsel, and given in the instructions of the Circuit Court, be sanctioned. It is too manifest to doubt, as well from the preamble of the act, as from its context, that it merely contemplated a remedial action between individuals, and intended to change the rights of parties as they stood at common law. This is both its letter and spirit, and is most clearly evinced by the forms of proceeding to be observed by the parties in seeking the remedy given under the law. Let it be asked whether any law of this State could be constitutionally enacted, which should provide for the occupancy of any portion of the lands of the United States, and that individuals should place fences thereon, and that a purchaser from the government of the United States, should not disturb the same for one year thereafter? Surely not, and yet this would, in effect, be the operation of the second section of this act, if the instructions of the Circuit Court in this case were correct.

Independent of this view of the case, the doctrine laid down in the case of Betts *v.* Menard,(1) decided in this Court in December term, 1831, is directly applicable. It is there said " that in the enactments of legislative bodies, where persons are spoken of, no other than natural persons will be intended, unless it be absolutely necessary to give effect to some powers already conferred on artificial persons, and which it is necessary should be exercised, to carry into effect the objects contemplated in their grant or charter."

The legislature could never have intended that the operations of the act referred to, should apply to artificial persons, at least of a political cast. Whether that artificial body be this State or the United States, can make no difference. The land purchased of the school commissioner, was held by the State in trust for the inhabitants of the township in which it lay, and was, in contradistinction to private lands, as much public lands, as if owned by the government of the United States.

As the instructions prayed for, ought to have been given, and those actually given were erroneous, the judgment of the Circuit Court is reversed with costs.

*Judgment reversed.*

(1) Breese's App. 10.